# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1150V
UNPUBLISHED

| | |
|---|---|
| RICHARD PARSONS,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: October 28, 2022<br><br>Special Processing Unit (SPU); Findings of Fact; Ruling on Entitlement; Table Injury; Onset; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Matthew F. Belanger*, Faraci Lange LLP, Rochester, NY, *for Petitioner.*

*Lauren Kells*, U.S. Department of Justice, Washington, DC, *for Respondent.*

### RULING ON ENTITLEMENT[1]

On August 8, 2019, Richard Parsons filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 23, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner can establish onset consistent with the SIRVA claim's requirements, and that Petitioner is otherwise entitled to compensation.

## I.     Relevant Procedural History

Following the initial status conference on October 16, 2019, Respondent was directed to determine his position in this case. Scheduling Order, issued Oct. 16, 2019 (ECF No. 13). But Respondent repeatedly over the next eleven months requested extensions to do so (ECF Nos. 14, 19, and 21), citing high case volume, budgetary constraints, and restrictions on hiring as justifications for the additional time (ECF No. 19).

Finally (and sixteen months after the petition was filed), on November 16, 2020, Respondent indicated an interest in pursuing a litigative risk settlement. Respondent's Status Report, filed November 16, 2020 (ECF No. 22). Thereafter, the parties engaged in settlement discussions, but reached an impasse by April 2021. Petitioner's Joint Status Report, filed April 9, 2021 (ECF No. 27).

On May 25, 2021, Respondent filed his Rule 4(c) Report (ECF No. 28). In it, Respondent argued that Petitioner could not establish that the onset of his shoulder pain occurred within 48 hours of vaccine administration. Respondent's Rule 4(c) Report at 8. Respondent raised no other objections to a Table SIRVA claim. *Id.* at 8-9. Following a telephonic status conference on July 13, 2021, Petitioner filed additional evidence concerning the onset of his symptoms on August 9, 2021 (ECF Nos. 29-32). On September 8, 2021, Respondent filed a status report stating that his position in this case remained unchanged, and that he was amenable to resolving the disputed onset concern on the record without a hearing and did not intend to file additional evidence (ECF No. 33).

On October 25, 2021, Petitioner filed a motion for a fact ruling and a ruling on the record that he is entitled to compensation (ECF No. 35). Respondent opposed the motion on December 9, 2021 (ECF No. 36), and Petitioner replied on December 13, 2021 (ECF No. 37). The issues of the onset of Petitioner's shoulder pain and Petitioner's entitlement to compensation are now ripe for determination.

## II.     Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding the claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling."  *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case

---

[3] In summary, a petitioner must establish receipt of a vaccine covered by the Program, administered either in the United States and its territories, or in another geographical area but qualifying for a limited exception; that residual effects of the injury continued for more than six months (or meet the severity requirement in other ways not applicable in this case); and no civil suit  has been filed and no award or settlement has been collected for the injury. *See* Section 11(c)(1)(A)(B)(D)(E).

3

causation is presumed, or an injury shown to be caused-in-fact by the vaccination received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Relevant Factual History

The factual dispute in this case is narrow, and involves only whether Petitioner's left shoulder pain began within 48 hours of vaccine administration.

### 1. Medical Records

On October 23, 2017, Petitioner received the flu vaccine intramuscularly in his left arm. Ex. 2 at 2. Two days later, on October 25, 2017, Petitioner was seen by physician assistant ("PA") Christine Rodgers at Churchville Family Medicine, his primary care provider ("PCP"), to follow up on an October 9, 2017 emergency department ("ED") visit for chest pain. Ex. 3 at 41. PA Rodgers noted that Petitioner's labs and EKG were checked at the ED and were found to be normal, and that the chest pain had resolved in 24-48 hours. *Id.* The review of systems section of the record does not contain any positive reports, and does not contain any indication that musculoskeletal symptoms were reported. *Id.* The examination section does contain a musculoskeletal note but states only "[w]alks with a normal gait." *Id.* at 42. The record is silent on any arm or shoulder concerns. *Id.* at 41-43. Petitioner was assessed with chest pain that resolved after three days and hyperlipidemia, which was not a new concern. *Id.* at 42-43.

On November 6, 2017, Petitioner returned to Churchville Family Medicine, where he was seen by Dr. Christopher Khamphoune, and now reported left shoulder pain for two weeks. Ex. 3 at 140-141. Petitioner specifically stated that the pain "started after his flu vaccine given at Wegmans." *Id.* at 140. The record includes a note "2wks ago Wegmans flu shot still has issues with shoulder pain non stop since flu shot." *Id.* On examination, his left shoulder exhibited normal active and passive range of motion ("ROM") and no masses, erythema, swelling, warmness, or skin lesions. *Id.* at 141. Petitioner was assessed with left shoulder pain of unclear etiology. *Id.* He was advised to try non-steroidal anti inflammatory medications, and to be seen by an orthopedist if the pain worsened or did not improve in 1-2 weeks. *Id.* The only referral made was to an orthopedist for "severe left shoulder pain." *Id.*

On November 27, 2017, Petitioner was seen by orthopedist Dr. John Gibbs for left shoulder pain. Ex. 7 at 1. Petitioner reported that he had a flu shot at Wegmans on October 23, 2017, and "has had ongoing pain that has not improved." *Id.* Petitioner reported that he had no preexisting left shoulder problems, and that his left shoulder was fine prior to the injection. *Id.* On examination, Petitioner's left shoulder had "mild tenderness at the region he reports was the injection site." *Id.* at 2. His left shoulder demonstrated "good range of motion about the elbow, wrist and hand." *Id.* Dr. Gibbs documented Petitioner's left shoulder active ROM in forward flexion as 170 (compared to 175 on the right), and abduction as 150 (compared to 175 on the right). *Id.* Petitioner was assessed with left shoulder pain. *Id.* Dr. Gibbs explained that the treatment options included injection, physical therapy, continued conservative measures with ice and anti-inflammatories, and further imaging. *Id.* Dr. Gibbs and Petitioner decided to proceed with an MRI. *Id.*

On December 20, 2017, Petitioner underwent a left shoulder MRI. Ex. 5 at 2. The MRI revealed mild teres minor tendinosis with subjacent posterior humeral head marrow edema and trace overlying intermuscular fluid, as well as mild osteoarthritis. *Id.* Petitioner then returned to orthopedist Dr. Gibbs on December 28, 2017. Ex. 4 at 4. Dr. Gibbs reviewed the MRI findings and strongly recommended physical therapy. *Id.*

On January 10, 2018, Petitioner underwent a physical therapy initial evaluation of his left shoulder. Ex. 6 at 27. The record indicates the onset of his injury as October 23, 2017, and indicates that Petitioner reported shoulder pain after a flu shot received that same date. *Id.* Petitioner continued physical therapy for eight visits through March 21, 2018. *Id.* at 3-25.

Petitioner returned to Dr. Gibbs for a follow-up appointment on April 30, 2018. Ex. 4 at 28. On examination, Petitioner's left shoulder active forward flexion was 160 degrees, with active abduction to 100 degrees, compared to 175 degrees for both on his right side. *Id.* Impingement signs were mildly positive at 90 degrees of forward flexion and abduction. *Id.* Petitioner was assessed with left shoulder pain. *Id.* The record indicates that Petitioner had some residual pain and continued to do his home exercise program. *Id.* Petitioner returned to his primary care physician reporting pain and requesting another MRI in February 2019. Ex. 3 at 204.

### 2. Affidavits

Four affidavits were filed in support of Petitioner's claim, including two from Petitioner. Exs. 1, 9, 10 and 11. Petitioner avers that he developed a "throbbing pain at the injection site" within two hours of receiving the October 23, 2017 flu vaccine. Ex. 1 at ¶ 5. He asserts that the pain was from the shoulder joint rather than the deltoid muscle, and progressed over several days to a sharp, stabbing pain with intense burning. *Id.* He stated that as the pain progressed, his left shoulder ROM was affected. *Id.*

Petitioner explains that although his pain was intense, he did not think it was abnormal and expected it to alleviate with time. Ex. 1 at ¶ 6. When it did not, he sought treatment on November 6, 2017. *Id.*

In his supplemental affidavit, Petitioner avers that when he was seen at his PCP's office on October 25, 2017, he mentioned his left shoulder pain to the PA he saw that day. Ex. 11 at ¶ 5. He states that his recollection is that they discussed that the pain should go away with time and there was nothing to worry about. *Id.*

Jacob Parsons, Petitioner's son, also filed an affidavit. Ex. 9. He states that he is a pharmacist at a Wegman's Pharmacy, and in October 2017 was in his second year of a college pharmacy program. *Id.* at ¶ 2. He saw Petitioner on the day of the flu shot,

6

October 23, 2017, and recalls Petitioner telling him that the pharmacist placed the needle too high on Petitioner's shoulder and may have injected the vaccine into the bursa rather than the deltoid muscle. *Id.* Jacob Parsons states that he recalled seeing that the band-aid covering the vaccine injection site was very high up on Petitioner's left shoulder near the AC (acromioclavicular, or shoulder) joint. *Id.*

Marla Parsons, Petitioner's spouse, also filed an affidavit on Petitioner's behalf. Ex. 10. She explains that she received a flu shot at the same clinic as Petitioner. *Id.* at ¶¶ 1-2. She recalls that Petitioner told her the vaccine was given high on his left shoulder, and that he showed her the band-aid, which was close to the top of his arm. *Id.* at ¶ 3. Later that evening, Petitioner complained to her of left shoulder pain that was more than he expected from a flu shot. *Id.* at ¶ 4. The next day, he continued to complain of pain, which concerned her. *Id.* She avers that she encouraged Petitioner to mention his left shoulder pain at the October 25, 2017 PCP appointment, and when he got home afterward, he told her that the PA did not seem to take his shoulder complaints seriously, telling him the pain would go away with time. *Id.* at ¶ 5.

### C. The Parties' Arguments

Petitioner argues that the contemporaneous medical records, corroborated by affidavit evidence, support a finding that the onset of his shoulder pain occurred within 48 hours of vaccine administration. Petitioner acknowledges that sworn testimony alone is not sufficient to prove onset. However, Petitioner asserts that the affidavit evidence in this case is corroborated by medical records. Of particular importance to Petitioner is the November 6, 2017 record, two weeks after vaccination, indicating that Petitioner reported "shoulder pain non-stop since a flu shot" two weeks earlier, Ex. 3 at 140. Mot. at 8.

Petitioner also cites his first orthopedic visit on November 27, 2017, where he reported that his pain started with a flu shot on October 23, 2017, and that he had ongoing pain. Ex. 7 at 1. Overall, Petitioner asserts that the medical records and sworn testimony consistently reflect that his shoulder pain began at the time of his October 23, 2017 flu shot.

Petitioner asserts that the October 25, 2017 record's silence on his left shoulder pain does not negate his claim. Petitioner cites Section 13(b)(2) of the Vaccine Act, which states that a special master may find that the first symptom or manifestation of onset occurred within the time period described in the Vaccine Injury Table even though the occurrence of such was not recorded or was incorrectly recorded, if a preponderance of the evidence demonstrates that the onset did in fact occur within that time period. Mot. at 10-11. Petitioner asserts that this is not a situation where Petitioner was asked about and denied left shoulder pain, or even where the medical record contradicts Petitioner's testimony. Instead, the record is silent.

7

Finally, Petitioner asserts that, if the court rules in his favor on the onset issue, the court should also find entitlement in his favor. Mot. at 13. Petitioner asserts that the sole objection to entitlement in the Rule 4(c) Report is onset.

Respondent maintains that the evidence does not support a finding that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination. Respondent cites Petitioner's October 25, 2017 appointment with his PCP, the record of which is silent on left arm or shoulder pain. Respondent asserts that the purpose of this medical visit was to "assess a longstanding cardiac condition." Opp. at 2. Respondent asserts that if Petitioner had any shoulder pain during that visit, "it would have most likely been documented thoroughly in the records given that left shoulder pain is one of the most common symptoms heralding cardiac issues in men." *Id.* In support of this contention, Respondent cites an article located at www.mayoclinic.org. *Id.* at n.2.

With respect to later medical records concerning onset, Respondent argues that "the notations in these records reflect histories reported by petitioner, and are thus based on the claims of petitioner himself." Opp. at 2. Respondent similarly discounts the affidavits submitted on Petitioner's behalf. *Id.* at 2-3.

Respondent argues that *Kirby* does not aid Petitioner because in this case, there is no compelling reason for petitioner's silence at the October 25, 2017 appointment. Opp. at 4. Respondent argues that if Petitioner had shoulder pain at the time of that appointment, because it is a well-known symptom that can indicate an underlying cardiac issue, "it is highly likely that the medical note would have documented and fully evaluated any reported shoulder pain." *Id.* Because this was not done, Respondent concludes that "it is very likely that petitioner did not have left shoulder pain on this date." *Id.*

In his reply, Petitioner asserts that Respondent ignores overwhelming record evidence, including a medical visit just 14 days after vaccination reporting shoulder pain since vaccination. Reply at 1. With respect to Respondent's assertion that the medical records documenting left shoulder pain as beginning after the October 23, 2017 flu vaccine reflect histories reported by Petitioner and thus are based on the claims of Petitioner himself, Petitioner responds:

> This is true in every SIRVA case because the first symptom of SIRVA is pain. There is no pathognomonic[4] test for pain and as such, in SIRVA cases, whether the first complaint is within 48 hours or not, the initial evidence is usually a medical record recording a subjective complaint of pain. If this Court were to adopt Respondent's position that such evidence is insufficient

---

[4] Pathognomonic refers to a "specifically distinctive or characteristic of a disease or pathologic condition; a sign or symptom on which a diagnosis can be made." *Dorland's Medical Dictionary Online*, https://www.dorlandsonline.com/dorland/definition?id=37212&searchterm=pathognomonic (last visited Oct. 28, 2022.

to prove onset of symptoms, it would be impossible to establish onset in a SIRVA case.

Petitioner's Reply at 2.

### D. Factual Finding Regarding QAI Criteria for Table SIRVA

Respondent objects only to the second SIRVA QAI requirement, arguing that there is not preponderant evidence that the onset of Petitioner's alleged SIRVA occurred within 48 hours, the time set forth in the Table. The other SIRVA QAI criteria are uncontested.

Several records support a finding that Petitioner's shoulder pain began within 48 hours of vaccine administration. At the November 6, 2017 appointment, Petitioner reported "shoulder pain non stop since flu shot" two weeks earlier. Ex. 3 at 140. Similarly, at Petitioner's first orthopedic appointment, he related his pain to the flu shot given on October 23, 2017, and reported ongoing pain that had not improved. Ex. 7 at 1. His physical therapy records have an onset date of October 23, 2017, and indicate that his pain began after a flu shot on that date. Ex. 6 at 27.

I do not agree with Respondent's suggestion that notations in medical records concerning onset should be discounted because they are histories reported by Petitioner. Contemporaneous medical records, including information supplied to or by health professionals for purposes of diagnosis and treatment, warrant consideration as trustworthy evidence. *Cucuras*, 993 F.2d at 1528. In this case, I find that the contemporaneous medical records containing Petitioner's reports to treating providers of his pain, and the providers' diagnoses and treatment recommendations, are credible and relevant evidence.

Respondent does not contest that there are multiple medical records supporting a finding of onset within 48 hours, and has not cited any records that specify a different date of onset. Rather, Respondent's position is based solely on the fact that the October 25, 2017 record is silent on left shoulder or arm problems, which Respondent infers means that Petitioner was not experiencing left shoulder pain on that date. Respondent asserts, based on an article found on the mayoclinic.org website, that left shoulder pain is a common symptom of cardiac symptoms in men. From this, Respondent infers that if Petitioner had mentioned left shoulder pain at the October 25, 2017 appointment, it would have been documented thoroughly.

Respondent is correct that the October 25th record is the closest in time to vaccine administration, and thus is the "most" contemporaneous record, entitling it to some weight. Respondent has also offered a reasonable explanation for why that appointment might have been a fair opportunity for Petitioner to note arm pain – since such pain could

bear on cardiac issues. This is not a case where an intervening medical visit silent on post-vaccination pain involved a specialist to whom an injured party would not be expected to report that symptom.

Nevertheless, the *overall* record supports Petitioner's onset contention – for several reasons. First, and as I have noted, ample subsequent records that are not all that *less* contemporaneous than the October 25th record support a Table onset. Indeed, the very next record after the October 25th record says so, and nothing that comes after is contrary. Second, there are persuasive witness statements also consistent with the contended onset.

Finally, Respondent's arguments about the nature of the October 25th treatment event must also be considered in the context of Petitioner's treatment history. Even though it is true, as Respondent argues, that the arm pain might logically have been reported in context of a cardiac issue, the record shows it *was* reported at the very next visit - two weeks after vaccination, on November 6, 2017. But there is no indication that Petitioner's provider considered his left shoulder pain a potential sign of a cardiac issue at this visit. Ex. 3 at 140. It is not noted in the cardiovascular review of symptoms or examination sections. *Id.* at 140-141. His provider did not recommend that Petitioner undergo any cardiac evaluation; rather, he directed Petitioner to follow up with an orthopedist if the pain did not improve. *Id.* at 141. Thus, even if left shoulder pain is a common presenting sign in men experiencing cardiac problems, the record suggests that in this case, Petitioner's provider did not view his pain as raising cardiac concerns *even after it was reported*. Rather, the record suggests that he considered it an orthopedic issue, and referred Petitioner to an orthopedist.

As a result, the significance of the omission of pain complaints on October 25th is not as great as Respondent argues. Indeed, it is understood in the Program that a medical record's silence on a matter does not establish its non-existence. *Kirby*, 997 F.3d at 1383. And I have observed in prior cases that it is unsurprising the SIRVA patients often do not ascertain the seriousness of their injury close-in-time to vaccination, expecting that pain will naturally subside. *See Allner v. Sec'y of Health & Human Servs.*, No. 19-1048V, 2022 WL 6962656, at *4 (Fed. Cl. Spec. Mstr. Sept. 9, 2022) (stating "it is not unusual in my experience adjudicating SIRVA claims that petitioners delay treatment, hoping their shoulder pain and/or soreness will abate"); *Deutsch v. Sec'y of Health & Human Servs.*, No. 18-0527V, 2021 WL 4995076, at *6 (Fed. Cl. Spec. Mstr. Sept. 24, 2021) (finding a 30 day delay in seeking medical treatment to be "not substantial when compared to other SIRVA petitioners"); *Winkle v. Sec'y of Health & Human Servs.*, No. 20-0485V, 2021 WL 2808993, at *4 (Fed. Cl. Spec. Mstr. June 3, 2021) ("It is common for a SIRVA petitioner to delay treatment, thinking his/her injury will resolve on its own"). Accordingly, a

10

preponderance of the evidence supports a finding that Petitioner experienced the onset of shoulder pain within 48 hours of vaccine administration.

Otherwise, the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii)-(iv). A thorough review of the record in this case does not reveal either a prior or other condition or abnormality that would explain Petitioner's symptoms, or pain or limited ROM other than in his left shoulder. Exs. 3, 4, 6, 7. Thus, all elements of a Table SIRVA claim have been preponderantly established.

### E. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of the injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements. Exs. 1, 2, 4.

## Conclusion

It is more likely than not that the onset of Petitioner's pain occurred on the same day as vaccination. In addition, all other SIRVA Table requirements are met, as are other requirements for entitlement. Therefore, Petitioner's motion for a fact ruling on onset and a ruling on the record that he is entitled to compensation is **GRANTED**.

**In view of the fact ruling herein and the evidence of record, I find that Petitioner is entitled to compensation.**

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master